# Exhibit A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**



------------------------------------------------------------------------X

DEBORAH CAPILUPI and JOSE VALETTE,
individually and on behalf of all others similarly
situated,

                                        Plaintiff,          Case No.: 15-05247

                    - against -                             (JMA) (AYS)

PEOPLE'S UNITED FINANCIAL, INC., and
PEOPLE'S UNITED BANK,

                                        Defendants.
------------------------------------------------------------------------X

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Deborah Capilupi and Jose Valette ("Plaintiffs"), on behalf of themselves and the "Class Members" (as that term is defined in Section 1.7 below) and Defendant People's United Financial, Inc. ("PUFI") and People's United Bank, National Association sued herein as "People's United Bank" ("PUB," together with PUFI the "Defendants", collectively with Plaintiffs the "Parties"), through their respective counsel, hereby enter into this Settlement and Release Agreement (the "Agreement") to resolve all claims which were asserted or could have been asserted against Defendants by Plaintiffs and the Class Members in the Litigation (as that term is defined in below).

## RECITALS

A.   WHEREAS, Plaintiffs filed a Class and Collective Action Amended Complaint on October 26, 2015 (the "Complaint") in the above-captioned action (the "Litigation") alleging that Plaintiffs and Class Members were misclassified as exempt from federal and state overtime laws;

B.   WHEREAS, the Complaint asserted class action claims under the New York Labor Law ("NYLL") and collective action claims under the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs;

C.   WHEREAS, five members of the putative collective have filed consents to join the Litigation;

D.   WHEREAS, the Parties participated in an all-day mediation on April 5, 2016 with the assistance of an experienced mediator, Michael D. Young, of Judicial Arbitration and Mediation Services ("JAMS"), Inc., which mediation was successful;

1

E.      WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members; and,

F.      WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiffs, have denied and continue to deny that the Class Members, or any putative collective members, were misclassified under the NYLL, the FLSA, or any other statute, have denied and continue to deny that Defendants are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint, and have denied and continue to deny that the claims asserted in the Complaint are appropriate for class or collective treatment, except for settlement purposes only;

G.      NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.1     Agreement.  "Agreement" means this Settlement Agreement and Release.

1.2     Authorized Claimant. "Authorized Claimant(s)" means a Class Member or the authorized legal representative of such Class Member, who timely and validly files a Claim Form and therefore is entitled to receive a Settlement Check.

1.3     Application for Final Approval. "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.7, seeking approval of the settlement.

1.4     Bar Date.  "Bar Date" means the date as set by the Court by which any Class Member who wishes to qualify as an Authorized Claimant must timely file a Claim Form pursuant to Section 2.4(D).

1.5     Claim Form.  "Claim Form" means the form as approved by the Court, a copy of which is attached to the Notice of Proposed Settlement, that Class Members (other than the Named and Opt-In Plaintiffs) must sign and return by the Bar Date to become Authorized Claimants.

1.6     Class Counsel.  "Class Counsel" or "Plaintiffs' Counsel" shall mean Outten & Golden LLP, Shulman Kessler LLP and Shavitz Law Group, P.A.

1.7     Class Members.  "Class Members" shall mean the approximately 204 individuals who worked as salaried Customer Service Managers ("CSM") for any Releasee in New York between September 10, 2009 and the Parties mediation on April 5, 2016, plus Opt-in Plaintiff William Sharp;

1.8     FLSA Collective.  "FLSA Collective" shall consist of all Class Members who were employed between September 10, 2012 and April 5, 2016.

2

1.8     Class List. "Class List" means a list of all Class Members, identified by name and address, contained in a confidential document that Defendants shall provide to the Settlement Claims Administrator.  The Class List is to be used by the Settlement Claims Administrator to effectuate settlement, and may not be used for any other purpose.

1.9     Costs and Fees.  "Costs and Fees" means any and all fees, costs, and expenses associated with this Litigation, including without limitation attorneys' fees, filing fees, expenses and professional fees, accountant fees and costs, Settlement Claims Administrator's fees and costs, and Service Awards, except excluding Defendants' attorneys' fees and costs.

1.10    Court.  "Court" shall mean the United States District Court for the Eastern District of New York, before the Honorable District Judge Joan M. Azrack.

1.11    Days.  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.12    Defendants.  "Defendants" shall mean PUFI and PUB.

1.13    Defendants' Counsel.  "Defendants' Counsel" means Ana Shields, Esq., and Noel Tripp, Esq., of Jackson Lewis, P.C., 58 S. Service Road, Suite 250, Melville, NY 11747.

1.14    Employer Payroll Taxes.  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.15    Fairness Hearing.  "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.16    Final Approval Order.  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Costs and Fees, and dismissing the Litigation with prejudice.

1.17    Final Effective Date.   Provided no appeal of the Final Approval Order is timely filed, the "Final Effective Date" means 30 days after the Court has entered a Final Approval Order approving this Agreement as provided in Section 2.8.  If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form entered by the Court.

1.18    Gross Settlement Fund.  "Gross Settlement Fund" refers to One Million Five Hundred Thousand Dollars ($1,500,000.00), the maximum amount Defendants have agreed to pay, exclusive of Employer Payroll Taxes.

1.19    Named and Opt-in Plaintiffs.  "Named Plaintiffs" refers to Deborah Capilupi and Jose Valette. "Opt-in Plaintiffs" refers to the following five individuals, who filed consents to join the Litigation pursuant to 29 U.S.C. § 216(b) prior to the Parties' mediation on April 5, 2016: William Sharp, Amoy Moo, Elizabeth Morla, Moussart Belizaire and Michelle Augustino.

1.20    Net Settlement Amount.  "Net Settlement Amount" means the amounts paid to Authorized Claimants, and Costs and Fees.  "Net Settlement Fund" means the Gross Settlement Fund minus the maximum attorneys' fees payment of $500,000, and all other Costs and Fees besides attorneys' fees.

1.21    Notice or Notices.  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit as authorized in the Preliminary Approval Order.

1.22    Objector.  "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.23    Opt-out Statement.  "Opt-out Statement" is a written, signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.24    Preliminary Approval Order.  "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Class pursuant to F.R.C.P. 23 solely for purposes of effectuating the Agreement; (ii) conditionally certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) solely for the purposes of effectuating the Agreement; (iii) preliminarily approving the terms and conditions of this Agreement; (iv) appointing Class Counsel as defined above; (v) directing the manner and timing of providing Notice to the Class Members; and (vi) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of the Fairness Hearing.

1.25    Qualified Settlement Fund or QSF.  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator in conformity with Treasury Regulation § 1.46B-1, *et seq.*, for the Net Settlement Amount paid by PUB.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Net Settlement Amount.

1.26    Released Class Claims.  "Released Class Claims" means all wage and hour claims specifically related to employment of Class Members with Defendants that were or could have been asserted under federal or state law by or on behalf of Class Members, excluding Class Members who opt-out of the settlement, for the period September 10, 2009 through the date of the Preliminary Approval Order or sixty days from the date Plaintiffs file the Preliminary Approval Motion, whichever is sooner.  The Released Class Claims include all claims specifically related to employment of Class Members and members of the FLSA Collective under federal and state law, including but not limited to claims for unpaid regular or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages and attorneys' fees, expenses, disbursements and Costs and Fees related to such claims.

1.27    Releasees.  "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, predecessors, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.28    Relevant Period.  "Relevant Period" means September 10, 2009 through the date the Court approves this Agreement.

1.29    Settlement Claims Administrator.  "Settlement Claims Administrator" means the qualified administrator selected pursuant to Sections 2.2 to mail the Notices and administer the calculation, allocation, and distribution of the QSF or perform any administrative duties pursuant to Section 2.2.  The Settlement Claims Administrator's fees and costs shall be borne by the QSF.

1.30    Settlement Checks.  "Settlement Checks" means checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement – or otherwise referred to as their Individual Net Amount.

## 2.    PROCEDURAL ISSUES

**2.1**    Settlement Class.  For purposes of settlement only, the Parties agree to class certification pursuant to F.R.C.P. 23 and 29 U.S.C. § 216(b) to include all Class Members and FLSA Collective Members, respectively.

**2.2**    **Settlement Claims Administrator.**

A.    **Retention.** Prior to the filing of a Motion for Preliminary Approval, Class Counsel shall engage Rust Consulting ("Rust"), as Settlement Claims Administrator.  Should Rust decline or otherwise not serve as Settlement Claims Administrator, the parties shall identify another Settlement Claims Administrator mutually acceptable to the Parties.  The Settlement Claims Administrator shall provide the parties with a certificate of insurance reflecting that the settlement fund is subject to an insurance policy with coverage of at least $5,000,000.

B.    **Funding Settlement Claims Administrator.** The Settlement Claims Administrator's costs and expenses shall be paid from the QSF as approved by the Court.

C.    **Responsibilities of Settlement Claims Administrator.**  The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Forms, (ii) performing a skip trace and resending, within one day of receipt, any Notice and Claim Form returned without a forwarding address or resending to those with a new forwarding address; (iii) corresponding to inquiries from respective parties regarding requests or communications made by the Parties; (iv) preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, and, objections or Class Members that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Claim Forms submitted by Class Members; (vii)

providing counsel for the Parties with copies of all Claim Forms submitted by Class Members so that Defendants can file the Claim Forms for the FLSA Collective with the Court; (viii) keeping track of requests for exclusion, objection or otherwise including maintaining the original mailing envelope in which the request was mailed; (ix) distributing the Settlement Checks to Authorized Claimants and/or Court-approved Costs and Fees; (x) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (xi) mailing Service Awards and Settlement Checks in accordance with this Agreement and  the Final Order; (xii) responding to inquiries of members of the Settlement Class regarding procedures for filing objections, opt-out forms, and Claim Forms; (xiii) referring to Class Counsel all inquiries by Class Members or Authorized Claimants regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of Class Counsel, and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing of Notices and mailing and receipt of Claim Forms, returned mail and other communications and attempted written or electronic communications with Class Members; (xvii) confirming in writing to Class Counsel, Defendants' Counsel and the Court its completion of the administration of the Agreement; (xviii) timely responding to communications from the Parties and their counsel; (xiv) providing all information, documents and calculations necessary to confirm the Final Settlement Amount; (xx) providing Defendants' Counsel with a photocopy of each endorsed settlement check; and (xxi) such other tasks as the Parties mutually agree.

D.   **Access to the Settlement Claims Administrator.**  The Parties will have equal access to the Settlement Claims Administrator throughout the claims administration period.  Class Counsel and Defendants shall provide the Settlement Claims Administrator with the information necessary to calculate the Settlement Checks or Net Amount for the individual Authorized Claimants, and reasonably assist the Settlement Claims Administrator in locating Class Members or Authorized Claimants.

**2.3   Preliminary Approval Motion.**

A.   Within 15 days of execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (1) the proposed Notice and Claim Form attached hereto as Exhibit A (2) the proposed Preliminary Approval Order, which shall be drafted by Class Counsel and approved by Defendants, (3) an executed version of this Agreement, and (4) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class under F.R.C.P. 23 and a Collective under 29 U.S.C. § 216(b) for settlement purposes only, and preliminarily approving the Agreement. Defendants may review the terms of the Preliminary Approval Motion and attachments to ensure they are consistent with this Agreement prior to it being filed.  Defendants may also review the proposed Preliminary Approval Order prior to the agreement being executed, and any other documents filed in connection with the preliminary approval motion at least three days prior to filing.  The Preliminary Approval Motion also will seek the setting of a date for individuals to submit Claim Forms, opt-out of this Agreement and/or provide objections to this Agreement,

which date will be fifty-five (55) days from the initial mailing of Notice and Claim Forms to the Class Members by the Settlement Claims Administrator, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

B.     Plaintiffs will file the Motion for Preliminary Approval as "unopposed."

**2. 4    Notice and Claim Forms to Class Members**

(A)    **Class List to Settlement Claims Administrator.** Within ten (10) days of the Preliminary Approval Order being executed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List.   All information provided regarding the Class Members will be treated as confidential information by the Settlement Claims Administrator and may not be used by the Settlement Claims Administrator for any purpose other than to effectuate the terms of settlement.   The Settlement Administrator shall not include a list of Authorized Claimants in any affidavit filed in support of approval of this settlement.  At the same time that Defendants provide the Class List to the Settlement Administrator, they will also provide this information to Plaintiffs' Counsel.

(B)    **Notice.**   The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt-out, participate by filing a Claim Form to join in the settlement, and/or appear at the Fairness Hearing.  Within thirty (30) days of the entry of the Preliminary Approval Order or as otherwise ordered by the Court, the Settlement Claims Administrator shall mail to all Class Members, via First Class United States Mail, the Court–approved Notices and Claim Forms – as authorized by the Court in the Preliminary Approval Order.

(C)    **Skip Trace and Re-mailing.** In the event that a Claim Form mailed to a Class Member is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain the correct address of such Class Member, including one skip trace, and shall attempt a re-mailing provided it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice and Claim Form to any Class Member who contacts the Settlement Claims Administrator or Class Counsel during the time period between the initial mailing of the Class Notice and the Bar Date and requests a Notice and Claim Form.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of Notice and Claim Forms sent to a Class Member that is returned as undeliverable, as well as the number of any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.  All costs of locating Class Members will be paid from the QSF.

(D)    **Bar Date.** Class Members that send their Claim Forms by the Bar Date will be deemed Authorized Claimants. To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked as mailed or electronically submitted to the Settlement Claims Administrator by the Bar Date and include a signature in the designated area. The Bar Date shall be fifty-five (55) days from the date of the initial mailing or as otherwise set by the Court.  Class Members to whom Notice was re-mailed, or were unable to file the Claim Form within 55 days due to such factors as change of

address, military service, hospitalization, or other extraordinary circumstances shall have their Bar Date extended by the number of days between the original mailing of the Notice and the re-mailing to that Class Member, up to a cap of twenty (20) additional days. To the extent that the envelope does not contain a post-mark, the date that the Class Administrator stamps the envelope or claim form "received" shall apply.

(E)     For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to file a Claim Form.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the People's United wage and hour settlement." ("Opt-out Statement").  To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C)     The Settlement Claims Administrator will stamp the received date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt.  The Settlement Claims Administrator shall provide all Opt-Out Statements in its compliance affidavit to be filed with the Application for Final Approval. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order in this case, and have any Released Class Claims released and dismissed with prejudice. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed Authorized Claimants. Defendants shall fund only the amounts allocated to each Authorized Claimant who returns a timely Claim Form as set forth in this Agreement. Defendants shall have no obligation to pay or fund any amounts allocated to Class Members who do not submit a timely Claim Form as set forth in this Agreement. For purposes of this Agreement, the Named and Opt-in Plaintiffs are deemed to be Authorized Claimants, and are not required to return or execute a Claim Form.

**2.6     Objections to Settlement.**

(A)     Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be

mailed to the Settlement Claims Administrator via First-Class United States Mail post-marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address and telephone numbers for the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the notice and share form mailed to the Objector, to Class Counsel and Defendants' Counsel by email  delivery no later than three (3) days after receipt of the objection. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Fairness Hearing and Application for Final Approval and Dismissal.**

(A)     After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain, including but not limited to, a compliance affidavit from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavit and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Approval Order. All documents shall be provided to Defendants' Counsel at least 10 days prior to the Final Fairness Hearing for their review and approval.

(B)     At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (1) finally certify the Class and the FLSA Collective for purposes of settlement only; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to the Authorized Claimants, including Service Awards, if any, to be paid to certain Class Members as described in this Agreement; (4) order Costs and Fees to be paid from the QSF; (5) order the dismissal with prejudice of all Released Class Claims asserted in the Litigation, including the claims of all Class Members who did not opt-out; (6) order entry of the Final Approval Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)     The Final Approval Order will order the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks and made proper withholdings, and (2) retain copies of all of the endorsed Settlement Checks.

**2.8     Termination of Agreement**

(A)     **Grounds for Settlement Termination**. Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order, except if the Court declines to enter the Preliminary Approval Order or Final Approval Order due solely to the amount of attorneys' fees sought by Class Counsel.  This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, and if the Court approves the settlement payment amount allocated to the Authorized Claimants as set forth in this Agreement, but not the application for attorneys' fees, (i) the Agreement may not be terminated, and (ii) any Court-required reduction of the attorneys' fees will be reallocated to Defendants.  The Defendants may not oppose (a) an application for attorneys' fees of up to $500,000.00, plus litigation costs, to be paid out of the Gross Settlement Fund, (b) a motion for reconsideration of such application, and/or (c) an appeal regarding Class Counsels' application for attorneys' fees.

(B)     **Procedures for Termination**.  To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail.

(C)     **Effect of Termination**. Termination shall have the following effects:

1.     The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

2.     Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, or Class Counsel.  However, the parties shall share equally (i) the costs and fees associated with the Settlement Claims Administrator subsequent to the signing of this Agreement, and (ii) the costs and expenses of the Settlement Claims Administrator associated with the mailing of termination notice and advising Class Members of the settlement termination, if any.

3.     If the Court grants preliminary approval but not final approval, the Settlement Claims Administrator will provide a Court approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

4.     The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

5.     The Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the entering of this Agreement.  Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action, and to contest the merits of the claims being asserted in the Litigation. However, Defendants may not oppose conditional certification of a collective action under the FLSA consistent with the Parties' "So Ordered" Stipulation dated January 8, 2016..  The Preliminary Order approving the settlement and certifying the class for settlement purposes only shall be null and void and the case may only be certified if Plaintiffs are granted class or collective certification after full briefing on a motion for such certification.

## 3.     SETTLEMENT TERMS

**3.1     Settlement Amount.**

(A)     Defendants agree to pay a maximum Settlement Amount of One Million Five Hundred Thousand Dollars ($1,500,000.00), which shall be used for allocation and calculation purposes to fully resolve and satisfy (1) any claim for Costs and Fees as approved by the Court, and (2) any and all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein.

(B)     **Default.**   A default under this Agreement shall be considered to have occurred if Defendants fail to make any scheduled payment within ten (10) business days of the due date for such payment pursuant to Section 3.1 ("Default"). Following any Default, the Settlement Claims Administrator or Class Counsel shall send notice of the Default by email and overnight mail (or by certified mail) (the "Default Notice") to Defendants' Counsel.  Defendants shall have ten (10) days from its receipt of the Default Notice to cure the Default.  If the Default is not timely cured within that ten (10) day period, Defendants shall reimburse all reasonable fees and costs associated with Class Counsel's recovery of the scheduled payment, as awarded by the Court.

(C)     **Funding.** Defendants shall fund the Qualified Settlement Fund no less than fifteen (15) days after the Final Effective Date in an amount equal to the Net Settlement Amount.

(D)     **Reversion.** Any uncashed Settlement Checks or Service Awards and all amounts remaining in the QSF ninety (90) days after the mailing of the last Settlement Checks will revert to Defendants.  For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

**3.2     Mailing of Settlement Checks**

(A)     Settlement Claims Administrator shall mail the Settlement Checks, Settlement Claims Administrator check, and Class Counsels' checks to pay for all Court-approved Costs and Fees as reflected in Section 3.1.

3.3     **Attorneys' Fees, Expenses and Costs.**

(A)     At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than Five Hundred Thousand Dollars ($500,000), plus reimbursement of their actual litigation expenses and costs to be paid from the QSF.  Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)     The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)     The attorneys' fees, expenses and costs shall be paid from the Qualified Settlement Fund seven (7) days after the deadline to provide the Net Settlement Amount set forth in Paragraph 3.2(C).

3.4     **Service Awards and Other Payments to Named Plaintiffs.**

(A)     In return for services rendered to the Class Members, Authorized Claimants and/or the Settlement Class, the Named and Opt-in Plaintiffs as defined above will apply to the Court to receive no more than Nine Thousand Dollars ($9,000.00) each as Service Awards from the QSF.  Service Awards shall be reported on Form W-2.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement.  Defendants may not oppose Named and Opt-In Plaintiffs' application for Service Awards.

(C)     The Service Awards shall be paid from the Qualified Settlement Fund seven (7) days after the deadline to provide the Net Settlement Amount set forth in Paragraph 3.2(C).

3.5     **Net Settlement Fund and Allocation to Authorized Claimants.**

Authorized Claimant's individual Settlement Check amounts shall be computed according to the following method:

A.      An Authorized Claimant's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formula set forth below:

    (1)     Payments from the Net Settlement Fund shall be paid to Authorized Claimants who worked during the period of September 10, 2009 through April 5, 2016;

    (2)     All Class Members will receive one point for each week worked as a CSM between September 10, 2009 and April 5, 2016;

    (3)     The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members during the period of September 10, 2009 through April 5, 2016 ("Point Value").

    (4)     Each Authorized Claimant's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

B.     Defendants will pay the employer's share of taxes in addition to the Net Settlement Fund.  Any portion of the taxes on the unclaimed money will revert back to Defendants.

C.     Defendants and the Settlement Claims Administrator shall exchange such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.6.

**3.6    Tax Characterization.**

  (A)    For tax purposes, 50% of payments to Authorized Claimants pursuant to Section 3.5 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and  interest.

  (B)    Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3.3 shall be made without withholding.  Class Counsel will receive a Form 1099 for this payment.

  (C)    The employee portion of all applicable payroll taxes shall not be Defendants' responsibility.  Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

4.      **RELEASE**

4.1     **Release of Claims.**

(A)     By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, under federal or state laws or common law by and on behalf of the Class Members in the Litigation.  The Released Claims include all statutory or common law claims under federal or state law (including but not limited to the laws of New York and Connecticut) for minimum, straight or overtime wages, spread-of-hours, failure to provide proper wage notices and/or statements, any related wage and hour claims, all claims for gratuities, and all claims for statutory penalties for failure to comply with the Wage Theft Prevention Act, interest on such claims, and attorneys' fees and costs related to such claims through the earlier of: 1) the date of the Preliminary Approval Order and 2) the date sixty (60) days after the filing of the motion for preliminary approval (provided such approval is granted).

For those Individual Class Members who return their Claim Forms by the Bar Date who were employed by Defendants during the period three years prior the filing of the Litigation, Released Claims shall also include all claims under the Fair Labor Standards Act for minimum or overtime wages, claims for liquidated damages, interest, attorneys' fees and costs.  Defendants' Counsel shall file the Claim Forms for such Class Members with the Court, in conformity with 29 U.S.C. § 216(b) and this Agreement, redacting any personal or confidential information.

(B)     In addition to the waiver and release contained in Section 4.1(A) above, and in consideration for the payment(s) received under Section 3.1(A) as well as Section 3.4, Named and Opt-in Plaintiffs, their heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Defendants and Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as

14

amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; the Massachusetts Law Against Discrimination; the Massachusetts Equal Rights Act; the Massachusetts Civil Rights Act; the Massachusetts Privacy Statute; the Massachusetts Sexual Harassment Statute; the Massachusetts Consumer Protection Act; the Massachusetts Wage Payment Statute; the Massachusetts Small Necessities Leave Act; the Massachusetts Maternity Leave Act; the Massachusetts Age Discrimination Law; the Massachusetts Equal Rights for the Elderly & Disabled Law; the Massachusetts AIDS Testing Law; the Massachusetts wage and wage–hour laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Named and Opt-in Plaintiffs' execution of this Agreement.

(C)     Except as provided in this Agreement, upon payment of the Attorneys' fees, expenses, and costs approved by the Court, Class Counsel and Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

## 4.2    Denial of Liability, Non-Disparagement & Non-Publicity

(A)     Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an admission that a class should be certified for any purpose in this case other than settlement purposes.

(B)     Plaintiffs agree not to make any negative, derogatory, or defamatory comments about any Releasee, including any statements relative to this settlement which portray any Releasee in a negative light.

(C)     Defendants agree to provide reference information concerning Plaintiffs consistent with Defendants' policy.  Plaintiffs agree to instruct future employers or potential employers to make inquiries concerning their respective employment by calling The Work Number

(800-367-5690), Defendants' employment verification service.  In response to any such inquiries concerning their employment, Defendants agree to provide prospective employers only with Plaintiffs' respective dates of employment, salary and job title.

(D)     The Parties agree not to publicize the terms of this settlement through the media.  Counsel for both parties represent and warrant that they will not comment to press/media or advertise any information regarding this settlement.

## 5.     INTERPRETATION AND ENFORCEMENT

5.1     Cooperation Between the Parties; Further Acts.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     No Assignment.  Class Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4     Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6     Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8     Continuing Jurisdiction.  The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.9     Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10    When Agreement Becomes Effective; Counterparts.  This Agreement shall become effective upon its full execution and approval by the Court.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11    Signatures.  This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.12    Facsimile and Email Signatures.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.13    Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: September 6, 2016                     People's United Bank, National Association

                                            By: _____

                                            Its: Senior Executive Vice President
                                                 and General Counsel

Dated: September ___, 2016                    _____
                                            Deborah Capilupi

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF _____     )

        On the ___ day of _____, 2016, before me, the undersigned notary, Deborah Capilupi personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release.  Ms. Capilupi

5.9     **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution and approval by the Court.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11    **Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.12    **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.13    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated: ~~July~~ Sept 3, 2016                    People's United Bank, National Association

                                              By:_____

                                              Its:_____

Dated: ~~July~~ Sept 3, 2016

                                              Deborah Capilupi

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF Nassau         )

        On the 3 day of September, 2016, before me, the undersigned notary, Deborah Capilupi personally appeared and proved to me, on the basis of satisfactory evidence,

17

Sep. 3. 2016  9:42AM                                                                                          No. 2197  P. 18

established that she is executing this Settlement Agreement and General Release.  Ms. Capilupi advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees.  She also confirms her complete understanding of this Agreement and the lack of need of translation services.

POONMATTIE SACKICHAND
NOTARY PUBLIC - STATE OF NEW YORK
NO. 12-01SA6006012
QUALIFIED IN QUEENS COUNTY
MY COMMISSION EXPIRES
DECEMBER 18, 2016

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2016          _____
                                              Jose Valette

STATE OF NEW YORK      )
                                          ) ss.:
COUNTY OF _____      )

On the __ day of _____, 2016, before me, the undersigned notary, Jose Valette personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Valette advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2016          _____
                                              William Sharp

STATE OF NEW YORK      )
                                          ) ss.:
COUNTY OF _____      )

On the __ day of _____, 2016, before me, the undersigned notary, William Sharp personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Sharp advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

18

established that she is executing this Settlement Agreement and General Release.  Ms. Capilupi advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees.  She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: ~~July~~ September 6, 2016

_____
Jose Valette

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF Westchester )

On the 6th day of September, 2016, before me, the undersigned notary, Jose Valette personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Valette advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

SANDRA FRANQUI
NOTARY PUBLIC, STATE OF NEW YORK
COMM. EXP. March 9 2018
03-4841295

Dated: July __, 2016

_____
William Sharp

STATE OF NEW YORK    )
_____       ) ss.:
COUNTY OF _____     )

On the __ day of _____, 2016, before me, the undersigned notary, William Sharp personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Sharp advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

18

established that she is executing this Settlement Agreement and General Release. Ms. Capilupi advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

Dated: July __, 2016

_____
Signature and Office of individual
taking acknowledgment

Jose Valette

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF _____      )

On the __ day of _____, 2016, before me, the undersigned notary, Jose Valette personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Valette advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

SEPTEMBER 3
Dated: ~~July~~ __, 2016

_____
William Sharp

MASSACHUSETTS
STATE OF ~~NEW YORK~~      )
                          ) ss.:
COUNTY OF Hampshire       )

On the 3 day of Sept, 2016, before me, the undersigned notary, William Sharp personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Sharp advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

TERESA WOERING
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
December 4, 2020

_____
Signature and Office of individual
taking acknowledgment

18

Dated: ~~July~~ SEPT 6, 2016

_____
Amoy Moo

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF WESTCHESTER      )

On the 6 day of Sept , 2016, before me, the undersigned notary, Amoy Moo personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Moo advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

WALESKA ALICEA
Notary Public - State of New York
No. 01-AL6331928
Qualified in Westchester County
My Commission Exp. 10/19/2019

Signature and Office of individual
taking acknowledgment

Dated: July __, 2016

_____
Elizabeth Morla

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF _____          )

On the __ day of _____, 2016, before me, the undersigned notary, Elizabeth Morla personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release.  Ms. Morla advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees.  She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2016

_____
Moussart Belizaire

19

Dated: July __, 2016

_____
Amoy Moo

STATE OF NEW YORK  )
                        ) ss.:
COUNTY OF _____  )

On the __ day of _____, 2016, before me, the undersigned notary, Amoy Moo personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Moo advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated: ~~July~~ Sept 6 __, 2016

_____
Elizabeth Morla

STATE OF NEW YORK  )
                        ) ss.:
COUNTY OF Nassau  )

On the 6th day of September, 2016, before me, the undersigned notary, Elizabeth Morla personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release.  Ms. Morla advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees.  She also confirms her complete understanding of this Agreement and the lack of need of translation services.

```
RICHARD L BUDELMAN
Notary Public - State of New York
NO. 01BU4872064
Qualified in Nassau County
My Commission Expires Sep 29, 2018
```

_____
Signature and Office of individual
taking acknowledgment

Dated: July __, 2016

_____
Moussart Belizaire

19

Dated: July __, 2016 _____

                                         Amoy Moo

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _____      )

On the __ day of _____, 2016, before me, the undersigned notary, Amoy Moo personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Moo advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

                                         _____
                                         Signature and Office of individual
                                         taking acknowledgment

Dated: July __, 2016 _____

                                         Elizabeth Morla

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _____      )

On the __ day of _____, 2016, before me, the undersigned notary, Elizabeth Morla personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Morla advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

                                         _____
                                         Signature and Office of individual
                                         taking acknowledgment

Sept 6th
Dated: July __, 2016 _____

                                         Moussart Belizaire

19

Florida

STATE OF ~~NEW YORK~~ )
                      ) ss.:
COUNTY OF Alachua     )

On the 6ᵗʰ day of September , 2016, before me, the undersigned notary, Moussart Belizaire personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release. Mr. Belizaire advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees. He also confirms his complete understanding of this Agreement and the lack of need of translation services.

Derrisk Boutin
Notary Public
State of Florida
My Commission Expires 04/09/2017
Commission No. FF 8589

Signature and Office of individual
taking acknowledgment

Dated: July __, 2016

_____
Michelle Augustino

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF _____  )

On the __ day of _____, 2016, before me, the undersigned notary, Michelle Augustino personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Augustino advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees. She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

4837-8621-9319, v. 1-5551-0837, v. 1-2718-1621, v. 1

20

STATE OF NEW YORK    )
                          ) ss.:

COUNTY OF _____    )

        On the __ day of _____, 2016, before me, the undersigned notary, Moussart Belizaire personally appeared and proved to me, on the basis of satisfactory evidence, established that he is executing this Settlement Agreement and General Release.  Mr. Belizaire advised me that he is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that he may have against Releasees.  He also confirms his complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

Dated:  July __, 2016

*Michelle Augustino*

Michelle Augustino

STATE OF NEW YORK    )
                          ) ss.:

COUNTY OF __Nassau__    )

        On the 6th day of September, 2016, before me, the undersigned notary, Michelle Augustino personally appeared and proved to me, on the basis of satisfactory evidence, established that she is executing this Settlement Agreement and General Release. Ms. Augustino advised me that she is doing so voluntarily and knowingly with the intent to settle this matter and to waive any and all claims that she may have against Releasees.  She also confirms her complete understanding of this Agreement and the lack of need of translation services.

_____
Signature and Office of individual
taking acknowledgment

4837-8621-9319, v. 1-5551-0837, v. 1-2718-1621, v. 1

TONY JOSEPH
Notary Public, State of New York
No. 01JO6171935
Qualified in Queens County
Commission Expires July 30, ___ 2019

20